### CAPITAL CITY SECOND NATIONAL BANK OF TALLAHASSEE v. ANDREWS, et al.
No. 69-1294

Circuit Court, Leon County.

December 8 and 16, 1969.

Ausley, Ausley, McMullen, McGehee & Carrothers, Tallahassee, for plaintiff.

Joseph C. Jacobs, Tallahassee and William G. O'Neill, Ocala, for the defendant legislative committee.

Gerald Mager and Julius F. Parker, Jr., both of Tallahassee, for certain members of the Governor's Club, intervenors.

HUGH M. TAYLOR, Circuit Judge.

*Order, December 16, 1969, as of December 8, 1969:* This cause came on to be heard this day on the motion for leave to intervene and motion to file a complaint in intervention on behalf of Lloyd C. Hagaman, Russell Stratton, Jr., and Nancy Malloy, (Mrs. W. P.), individually and as employees of the office of the governor and the motion for leave to intervene and to file a complaint in intervention on behalf of Wilbur Brewton and John C. Behringer and the motion of the intervenors for a restraining order enjoining and restraining the defendants from requiring the plaintiff to respond to the subpoena heretofore issued by the defendants and the court being fully advised in the premises finds as follows —

The motion for leave to intervene on behalf of Lloyd C. Hagaman, Russell Stratton, Jr., and Nancy Malloy, (Mrs. W. P.), individually and as employees of the office of the governor be, and the same is hereby granted, and the intervenors are permitted to file their complaint in intervention herein.

The motion for leave to intervene on behalf of Wilbur Brewton and John C. Behringer be, and the same is hereby granted, and they are permitted to file their complaint in intervention herein.

It is further ordered and adjudged that the application by the intervenors for a temporary restraining order and other relief is denied.

The court finds that each house of the legislature has the power to initiate investigations while the legislature is in session without the necessity of the concurrence of the other house, and that the authority to initiate such an investigation during sessions is not the transaction of legislative business within the meaning of subsection (c) 1, of section 3, article III of the constitution of 1968.

The court further finds that resolution 18A, having been introduced in the house of representatives by a two-thirds vote, authorized the defendants to conduct its investigation.

Rule 6.14 adopted by the legislature during its special session authorizes the chairman of the committee to issue the subpoena here in question, and the court therefore finds it the duty of the plaintiff bank to have proper officers respect and respond to the subpoena and appear before the legislative committee either at the time designated in the subpoena, or at a time to be agreed upon for the production of the documents referred to in the subpoena.

The court is further of the opinion that the governor's club has functioned in such a manner so closely related to the office of the governor that it is not such a private organization as to place it beyond the scope of proper legislative investigation as to sources of revenue and its expenditures of that revenue.

The court further finds that the requirement that the records of the governor's club held by the plaintiff, Capital City Second National Bank of Tallahassee, a banking association under the laws of the United States, be disclosed to the defendant is not in violation of any constitutional right of the club or any of its members; and that said bank is under a legal duty to respond to said subpoena duces tecum, which is exhibit no. 1 attached to said complaint; and the court, therefore, orders the bank to comply therewith.

The intervenors are permitted to intervene only in subordination to the main cause, and only to the extent that their rights are affected thereby.

The court is of the opinion that members of the governor's club or others having knowledge relating to the club have no right to disobey the subpoena — and further that to require them to divulge their knowledge of the membership of the club does not abridge any right guaranteed by either the first or fourteenth amendments to the United States Constitution or any applicable provisions of the Florida Constitution.

*Decree, December 16, 1969:* By complaint praying for a declaratory judgment the Capital City Second National Bank, herein referred to as the bank, invokes the jurisdiction of the court to determine its duty to respond to a subpoena duces tecum issued by the committee on elections of the house of representatives of Florida requiring one of its officers to appear before the committee and produce the bank's records of deposits and disbursements of moneys by the governor's club, an organization which is apparently unin-

corporated but the general nature of which is disclosed by the pleadings.

Before hearing on the complaint, five individuals, none of whom are connected with the bank, but some of whom are admittedly connected with the club, who have been subpoenaed to appear before the committee, sought to intervene. These interventions were allowed, but strictly in subordination to the main action and only to the extent that the law and facts necessarily determined in the main action would affect the rights of the intervenors.

The bank is basically in the position of a stakeholder. It merely wants to know if its legal duty to respect the privacy and confidence of its depositor must yield to the power of the committee to subpoena its records.

The real controversy is between those interested in the club on the one hand, and the committee on elections on the other. This, of course, involves the validity of the subpoenas.

The attack upon the validity of the subpoenas has three aspects — (1) the authority of the committee, (2) the validity of the exercise of the authority of the committee, and (3) the right of privacy and free association of the members of the club.

### The authority of the committee

It is first contended that the authority of the committee is derived from resolution 18A of the 1969 special session of the legislature and that this resolution is invalid because it was not within the purview of the call of the governor convening the legislature, and its introduction was not with the consent of two-thirds of the membership of each house of the legislature pursuant to section 3(c)(1), article III of the constitution which provides that in a special session of the legislature convened by proclamation of the governor "only such *legislative* business may be transacted as is within the purview of the call \*\*\* or is introduced by consent of two thirds of the membership of each house." (Italics added.)

Resolution 18A is a house resolution relating to a committee of the house and its powers of investigation.

The adoption of such a resolution is not the transaction of *legislative* business within the purview of section 3(c)(1), article III. Other sections of the constitution give *each* house, acting independently of the other, numerous powers — judging the qualifications and elections of its members — electing officers — determining its rules of procedure — disciplining its own members — conducting investigations. These are not *legislative* duties although they are necessary incidents to the proper functioning of legislative

bodies. That this is the intent of the constitution is manifest when article III is considered as a whole. Section 1 places the *legislative* power in a single entity — "the Legislature of the State of Florida" — which is compound of two bodies, but each of these bodies has specified constitutional powers as to which it acts as an autonomous entity. At a special session of the legislature each house can, without the concurrence of the other, determine the qualifications and elections of its members, adopt rules of procedure, discipline its members and conduct necessary investigations. Legislation is the product of the action of both houses. In a special session *legislation* must be brought before each house and acted upon by each house before it becomes law. The consent of two-thirds of each house is essential to a consideration of proposed legislation. But the wording of the constitution is very clear that the two-thirds consent requirement is limited to *legislative* business.

Should a two-thirds vote of the senate be required for the house to pass upon the election of a new member? Or a two-thirds vote of the house for the senate to consider the appointment of a public officer? These questions answer themselves.

One of the major functions of legislative investigations is to ascertain facts pertinent to the need for legislation on various subjects, and the type of legislation which will best serve the public interest. Frequently such investigations precede the actual drafting and introduction of proposed legislation. The members of the house of representatives can more intelligently vote upon the *introduction* of legislation after its investigating committee has ascertained and reported on the material facts.

Resolution 18A was introduced with the consent of two-thirds of the members of the house of representatives. This was not constitutionally necessary, but it clearly indicates that unanimity of opinion of its necessity which is the underlying philosophy of the requirement of section 3(c)(1) of article III.

Resolution 18A was constitutionally and validly adopted by the house of representatives.

### The exercise of authority

It is next contended that in the mechanical process of the issuance of the subpoenas there was a failure to follow the mandatory requirements of section 5, article III of the constitution.

The first sentence of this section provides that "Each house when in session may compel attendances of witnesses and production of documents ***". The second sentence provides that "Such powers

*** may be conferred by law upon committees when the legislature is not in session ***."

It is argued that only the full house acting as a body can order a subpoena if the legislature is in session, and that committees can be authorized to issue subpoenas only when the legislature is not in session. This is a misapprehension of the meaning of this section.

Each house is charged with the duty and given the power to make its own rules of procedure. The process by which a legislative committee procures the attendance of witnesses is a matter of procedure and is governed entirely by the rules of the house appointing the committee.

The purpose of the two provisions of section 5 are quite clear, and quite logical. When the legislature is in session each house can, without the consent of the other, appoint committees and may conduct investigations directly or through committees. At such times each committee is always under the direct control of the house appointing it.

When the attendance of a witness is required the committee acts for the house in the issuance of process. It would, indeed, be a strained construction of the constitution to hold that every time a witness is required by a committee an application must be made to the whole house and the application debated before and voted upon by the entire body before process could issue.

However, if a committee is to function between sessions of the legislature, if it is to have the powers of subpoena without being under the immediate supervision of the main body, the drafters of the constitution deemed it wise to require that the power to issue process be exercised only pursuant to a law in the enactment of which the other house must have concurred.

Whether adequate or not, these are the methods outlined in the constitution to permit proper investigation and, at the same time, avoid the evils of "witch hunting".

The rules of the house of representatives authorizing the issuance of subpoenas by its committees when the legislature is in session are valid and constitutional.

### Privacy and freedom of association

It is finally argued that the governor's club is a private association and that the proposed inquiry into its finances involving a determination of donors and amounts of contributors to and the

expenditures of the club are within the protection of the state and federal constitutions, particularly the first, fourth and fourteenth amendments to the federal constitution, and sections 2, 4, 5 and 12 of section 1 of the state constitution.

The right of privacy, the freedom of association and freedom from unreasonable searches and seizures are among the most prized attributes of liberty. The unreasonable invasion of those rights by government is always to be opposed by those who would defend freedom. But the rights of all the people cannot be protected by proper legislation if the facts necessary to formulate such legislation cannot be ascertained. Reasonable investigation into matters directly affecting government is not forbidden by the state or federal constitution.

The case before the court might present difficulties were it not for the frank statement made by the governor to the committee and the testimony identifying the form letter used in procuring membership in the club.

The statement of the governor, a copy of which was filed before the court, very clearly indicates that revenues of the club were and are disbursed under the immediate supervision of the governor or those in his office and directly under his authority. These funds are disbursed in three general areas —

(1) In the payment of expenses of the governor in the performance of his duty to take care that the laws be faithfully executed but with reference to which legislative appropriations were not made or were inadequate.

(2) In the payment of what might be termed quasi-official expenses of the governor such as attending governors' conferences and out-of-state entertainment of prospective large investors in Florida when state appropriations were not made or were inadequate.

(3) Payment of purely political expenses of the governor's non-official but political activities.

A form letter used to solicit membership in the club indicated quite clearly that those who became members would have the privilege of "*** regular meetings with the Governor and a direct telephone line to him." (It should be noted that this contact is the governor — the chief executive of the state — as distinguished from the individual who occupies that office.)

The form of application indicates that each membership costs exactly $500, but the form also shows that one individual or company can purchase any number of memberships.

There has been no effort to establish before the court that there has been any membership in the club purchased from any improper motive or that any of the funds of the club have been spent for any unworthy purpose.

These facts, however, do not deprive the legislature of the right, or even the duty, to determine the amount of money spent by the chief executive of the state in the performance of his official duties, the proper financing of which is the mandatory duty of the legislature under article VII of the constitution. It is also a matter for proper public concern to determine the sources of money spent under the direction of the chief executive in enforcing the law, particularly when this is done through non-official employees of the governor.

The receipts and disbursements of candidates for public office have long been regarded as an appropriate subject for statutory regulation and public disclosure. Whether similar laws applicable to the financing of political activities of persons in office who are eligible, even if not avowed candidates, for reelection is a proper matter for legislative consideration. A thorough investigation of past activities in this area may indicate that no such legislation is needed. On the other hand, such an investigation may lead to desirable improvements in the law. Certainly it cannot be said to be an unreasonable or unconstitutional invasion of any citizen's rights to determine the amount of private funds which have been placed under the control of a public official and how those funds have been spent.

It is not an invasion of any of the constitutional rights of any of the members of the club for the bank to be required to produce before the committee the records subpoenaed in this case, or for members of the club or others having financial records of the club to be required to disclose such information as they have relative to the receipts and disbursements of the club.

The court is not now, and cannot now rule upon the propriety of every question which might be put to a witness. It must be assumed that counsel for the committee and the witnesses will be able to properly apply this opinion and any differences will be presented for adjudication by orderly proceedings.

This memorandum is filed as a statement of the reasons for the ruling announced orally by the court December 8, 1969, and later entered nunc pro tunc.